Thank you, Your Honor. May it please the Court, my name is Donald Burke. I represent the appellant, William Brennan, in this matter. This is an appeal from a denial of a preliminary injunction. The outcome of this matter is driven largely by the facts. Facts that were Right. Oh, absolutely, Your Honor. I think, well, except it occurs to me that the point they raise, Your Honor, is, oh, I'm sorry, Your Honor. Five minutes for rebuttal, please. It does occur to me this, Your Honor, on that point. We believe, and we strongly, we think the facts and the record are very clear, and the law is supportive of this, that the district court erred, grievously erred, by denying the preliminary injunction. What William Patterson University is arguing now, that once they, the district court errs a second time in dismissing the complaint, then this appeal just disappears. It strikes... But the second appeal wouldn't disappear. Well, it wouldn't, but in the meantime, I think... It would be the appeal from the final argument. Absolutely, but the reason why we're here is because we have an appeal as a matter of right from a denial of a preliminary injunction. So the fact that the district court makes a second error in our view does not eliminate the appellate jurisdiction over the initial denial of the preliminary injunction. So I think the merits are before the court. I think the facts and the law should be evaluated thoroughly, and I think the appellate wins. You're saying that that dismissal of the complaint is not a final order because of the presence of the complainant against William Patterson? Absolutely, Your Honor, which is preceded. As far as the preliminary injunction is concerned, what relief can you get? I mean, you couldn't run a certain program before the fact that you were carrying a question about Wallace's form. So how can anybody be granted relief for that? No, well, it wasn't such a... I don't mean to interrupt, Your Honor. I'm sorry. What's the relief? Well, the relief is this. The appellant, Mr. Brennan, sought to air his show on the public access cable stations operated and controlled by Wayne Township and William Patterson. He's been denied. They continue to deny him that opportunity to speak. They've done so on the basis of content. Let me just be clear. So as regard to episode one, only is that what we're talking about? Yes, Your Honor, and also there is a challenge, a facial challenge of the unwritten rules that Chill hit not only his speech but others, and it's presumptively invalid under very strong precedent. Well, we understand that, but why can't that be dealt with under the appeal for the final judgment? Nobody would help you with respect to what happened then. Because in the meantime, he and others are having their free speech rights violated. That's the point. The point is he may be right, but why can't that be raised under the appeal? Have you filed an appeal for the dismissal? No, of course, but was that certified under the rules? It has not been certified. It was only dated May 31st, so I have 30 days, and here it is, the 26th. So the point of the matter is this, though. It's not appeal, but it's a rightful one in the case of Chill Patterson. Yes, Your Honor. But do you intend to appeal under the final judgment? Absolutely. If I were going to establish a procedural history in this case, I think that this court should reverse the district court, remand it for a preliminary injunction, and then we're back before the district court on that issue. How can you get a preliminary injunction when on its face there is no likelihood of success on the merits? Well, the likelihood of success of the merits at this juncture of the case is up to this court. Yes, but we have to look at the likelihood. It requires us to look at something. Okay, and what... Unless this court corrects that mistake in application of the law. Because it's a matter of timing, Your Honor, and what that would do would be to eliminate the appellate jurisdiction. And that's what I'm here to argue. But the fact that the district court has dismissed the case does not impact appellant's right to have a review of the district court's determination and denial of the preliminary injunction. So, I think the fact that the judge below dismissed the case... Okay. And here's why I think, Your Honor, that the district court erred so badly. Three reasons. Three undisputed facts in this record strongly require reversal and an entry of a preliminary injunction. The first has to do with the creation of the public access cable channels in question. They were created pursuant to the Cable Act of 1984 by franchise between Wayne Township and Cablevision. Wayne Township required Cablevision to set aside two channels, public access channels, for the broadcasting of public educational and governmental programming for the benefit of Wayne Township residents. Now, this is more than actually just a fact that's undisputed. By the way, the reason I harp and focus on the undisputed nature of the facts in this case is because the matter proceeded by way of verified complaint. No opposition whatsoever was set forth by either of the defendants in opposition to the facts pled in the verified complaint. There was no hearing, but they had an opportunity to submit affidavits in opposition if there were factual issues, and there were. So, the verified complaint sets forth that this was created by franchise between Wayne Township and Cablevision for public access to benefit Wayne Township. Now, as I say, it's more than a fact because that creation of public access channels for the benefit of Wayne Township residents is set forth in Wayne Township Ordinance 56. So, your argument is that the judge committed an error when she found that it was a limited public forum. Yes. She should have found it was a designated public forum. Is that your argument? Absolutely, but the reason why flows from these three facts that were undisputed. The first is the creation. The second... I understand. I just wanted to make it explicit. Oh, everything flows from these facts, Your Honor. You're absolutely correct. And this is a designated public forum. It's a designated public forum because it was created for the benefit. It was created by Congress. Congress intended in the Cable Act, Your Honor, to create this electronic soapbox for the purpose of public discourse. And this is the quintessential designated public forum. Now, the district court erred because of this notion by William Patterson University that they're a university, therefore they can act however pretty much they want in denying access to this public access cable channel. And the focus of their argument is that this is a university television station.  It's absolutely contradicted by the record. This is a cable broadcast that is available to 55,000 people in Wayne Township, not the campus. Now, by agreement, Wayne Township allowed William Patterson University to operate in control. The reason why that's important, and that's conceded, by the way, by Sandra Miller's letter that's attached, that's in the appendix. And it's never been disputed that this is a public access channel. But it doesn't change. The nature of the channel as public access does not change because of the identity of who is operating in control. Now, the operation in control is important because the Cable Act specifically says, Congress said, those who operate in control, public access channels, shall not exercise editorial control. That is what creates this form as a designated public forum. Congress's intent to allow this as an electronic soapbox, to allow this for public discourse, free of editorial control. And that is what the William Patterson and Wayne Township, both in their operation in control, violated. The standard is clear that in a designated public forum, this is... The court never told us we have to apply the public forum standard at all with public government in the Denver area case. Well, the facts in that case were very different. But there's a Third Circuit case, Judge Britton, which affirms the district court's handling of a public access cable station and applied strict scrutiny. So the law in this circuit is very clear, that public access is a designated public forum, therefore strict scrutiny applies. If strict scrutiny is applied here, there's just no question that the preliminary injunction should have issued and respectfully should issue now. This is a situation, Your Honor, also... I feel strongly that there really is no factual or legal question about this forum as being a designated public forum. Congress said it is. The Wayne Township required in its franchise said it's public access. The Wayne Township ordinance says it's for public access. And that essentially creates it as a designated public forum. And the application of the rules by William Patterson, even if it were a reasonable time, place, and manner restriction applicable to something other than something less than a designated public forum, they're not even reasonable, Your Honor. They're unwritten. There's no guidance. It's a prior restraint that's presumptively invalid. And both of the Wayne Township ordinance and the William Patterson unwritten general rules of conduct act as a prior restraint. It's affirmed by the Third Circuit. It was, but it was affirmed. Yes, Your Honor. That's what I thought I said. But there's lots of cases, all unaddressed by the district court, all unaddressed by William Patterson and Wayne Township that designate these public access stations. Thank you. Melissa Dutton Good afternoon, Your Honors. May it please the court, my name is Melissa Dutton, Deputy Attorney General representing William Patterson University defendants. I'd like to begin just by addressing some of the procedural issues that the court addressed with Mr. Burke. The first is that it is our belief that this appeal, as pertaining to William Patterson, is completely moot. And that is based upon the district court's dismissal of all the underlying claims against William Patterson. Because of the fact that the issues that are present in this appeal are no longer live, this district, excuse me, this court has nothing to rule on, therefore the appeal is moot. Do you have a simple case that makes that simple statement, save us time? Yes, actually I think Judge Fischer is aware of the case, it's the Jackson v. Roman Haas case, it came out in 2010. I just want to make sure you make us all aware right here. Absolutely, yes. And we believe that that case is directly on point. Where that case dismissed an appeal as moot were the claims underlying a preliminary injunction.  I was, Your Honor, however I did not receive notification of the court's denial of the reconsideration until June 13th. Absolutely, but it's still our position that this court wouldn't retain jurisdiction over it until the appeal of those claims is filed. You wouldn't retain jurisdiction over what? Over the appeal as to William Patterson for the preliminary injunction issue. Because the claims against William Patterson were dismissed below, albeit an interlocutory decision, if this court were to issue the relief sought by Mr. Brennan, there's no party left in the case to apply that relief to. Because William Patterson has been dismissed. So therefore, because Brennan did not move to finalize that order and therefore appeal that interlocutory, this court is without the ability to order the relief being sought against William Patterson. The claimant would be able to finalize the appeal of the final order? Yes. Okay, now, what would the issues on that appeal be? Yeah, well, would that be problems for the court to have that issue? Absolutely. One of the problems, I mean, we're... Exactly. That's exactly our position. The substantive issues would be exactly the same. Because one of the problems that need to be met in order to receive a preliminary injunction is the likelihood of success on the merits, those merits would be addressed in the appeal of the dismissal. So therefore, it would be an inefficient use of judicial resources to go through the analysis at this point. Questioner 2 I think Your Honor is correct about that. And I think that goes directly to the point of why a preliminary injunction was not appropriate at that stage. There's case law to support that... No. No, it did not happen. But it really is the plaintiff's burden when requesting the extraordinary relief of a preliminary injunction to show at the time of the request good and sufficient reasons that warrant that preliminary injunction. And that specifically is addressed by the court in the AT&T case as to why preliminary injunctions are so extraordinary, especially in the beginning of a case where an application is filed before the opportunity for discovery. It's very rare that you'd be able to meet the standard in a preliminary injunction application because of the fact that there hasn't been enough evidence discovered by the plaintiff and through the case to establish that good and sufficient basis for the preliminary injunction. So we assert that that goes specifically to our position that the preliminary injunction was properly denied. So two things going back. One is you say we have no jurisdiction to hear this appeal as it relates to a preliminary injunction. Not just a matter of discretion. You talked about the waste of resources. But you're saying there's no power, no authority by this court to hear the appeal. Is that true? That's our first point, yes. And then you look at the preliminary injunction. Very brief, very short, very attenuated, right? Yes. So when you look at the standard, designated public forum versus limited public forum, trying to determine whether this is one or the other, would you agree that the Supreme Court has really held that when you're looking at a limited public forum situation, that you have to look in some detail at the underlying facts in order to tailor the approach to ascertain the parameters of such a forum? I would agree that in determining whether something is a limited forum versus a designated forum, you need to look at the intent of that forum and the intent that the government had and what the use of that forum should be. But it is also my position that that intent was clear on the record before the district court. It is clear, and I wanted to also take the opportunity to dispute some of the facts that Mr. Burke characterized as undisputed. All right. But the judge focused on William Pattinson University really mainly, right? Yes. In that context, the court didn't really get into much in terms of the programming and how they were trying to limit the message and trying to limit the audience, how it served the educational purpose. There was not that kind of discussion that you would normally expect. Was there in terms of determining whether this was a limited public forum or not? I agree with you, but I don't think necessarily that the court needed to go into that discussion because I think that the evidence before this court now on the record still supports the district court's decision. And I think that, as pointed out by Judge Fisher earlier with Mr. Burke, that there has been no definitive case indicating that a public access channel is, in fact, a designated public forum. We also don't concede that the William Pattinson University channel was, in fact, a public access channel. It's a public educational governmental channel given to William Pattinson to use for educational purposes. But aside from all of that, looking on the record today, we believe that even if the court were to find that this was a designated forum, that the restrictions on Mr. Brennan's speech were narrowly tailored to the government's compelling interest. And we think that William Pattinson had two very compelling interests here. One is that it needs to be consistent with federal law. The second is that it needs to protect children from offensive material. The first relating to federal law that prohibits indecent language, which is defined as any sexual or excretory organ, activity or organ, that is shown in an offensive way. Clearly the language at issue in this case arguably meets that definition, and therefore the university had its decision to restrict that word was narrowly tailored to its interest in not violating federal law. Additionally, as pointed out by Mr. Burke, the programming on William Pattinson's television station is not just shown to university student body and faculty, but is also shown to the residents of Wayne Township, which would include children. They also have a compelling interest not to expose children to that offensive language. So even if the court were to find that in fact it was a designated forum, which we do not concede, we think that we meet that standard. I'd also like to just address the issue of the regulations of William Pattinson being unwritten. Mr. Burke repeatedly indicates that they're unwritten. In fact, they do have a written policy. This is evidenced in the letter from William Pattinson to Mr. Brennan in the appendix on A24. They reference the documents that comprise their code of conduct and offer to send them to Mr. Brennan via email. Mr. Brennan never took them up on that offer, and therefore they're not part of this record. However, they do exist, and the district court never looked at that, never conducted that analysis, and I assert that that issue is not before this court on appeal. And just to wrap up, the second issue I wanted to talk about is the there are two episodes at issue here in this appeal, Episode 1 and Episode 3. We assert that the relief sought as to Episode 3 is moot, as William Pattinson did in fact air that episode after Wayne Township declared it would not enforce its ordinance against Mr. Brennan. And again, we would just reiterate that this is a limited public forum based upon the fact that the Cable Act simply gives franchise authorities the option to require that cable operators provide them with two public educational and governmental channels. The franchise authority retains the authority and the power to regulate those channels as contemplated by the Cable Act and by case law. Wayne Township gave use to one of its channels to William Pattinson specifically for educational and public access purposes, as evidenced by Ordinance 56. However, it remains limited because of the fact that even though it was open to the public, it was open to the public for the limited use of educational purposes only. Therefore, when the government opens up something that is not traditionally a public forum for a limited purpose, it does not then automatically open it up for a designated public forum. Thank you, Your Honors. Mr. Morris. Good afternoon, Your Honors. May it please the Court, Joseph Morris on behalf of the Pele Township of Wayne. Our position, Wayne's position, is that the appeals move as to Wayne as all issues regarding temporary relief were voluntarily agreed to by Wayne through express representations of counsel in an October 27, 2011 letter to the District Court. In that letter, the Township addressed plaintiff's request for preliminary restraints. One is that the Township was seeking preliminary injunction in joining defendants from denying access to the program. The Township of Wayne voluntarily agreed that Ordinance 5A-8 does not permit the Township of Wayne to deny access to the program. Accordingly, the Township of Wayne advised plaintiff that they would provide immediate access of the program on its channel prior to the election. Upon information of belief, Wayne aired the program at issue multiple times prior to the election in conjunction with the request of plaintiff. Accordingly, Wayne takes the position that the temporary preliminary injunctive relief was moot since the November 3, 2011 order was issued by Judge Hochberg. Further, Wayne has agreed not to enforce 5A-8 in the future with concern to if a plaintiff in fact submits further programs in the future if he is a candidate for office. If you look at the October 27, 2011 letter, which is in the appendix, page 70, without waiving any privileges, Wayne Township was advised of the constitutional issues and concerns with the ordinance at issue and has been advised to review that ordinance and make any amendments to that ordinance that are necessary to pass constitutional muster. Upon information of belief, Your Honor, I am not the Corporation Counsel for the Township of Wayne. I am an outside counsel attending this one particular case. It has been under advisement. I believe that it has not been amended to date, though, Your Honor. Another issue pragmatically could have been that Plaintiff's Counsel never contacted the Township of Wayne or proposed that we enter a consent order. We made an express representation to the court that the ordinance would not be enforced, and Wayne at this point in this matter is bound by that representation to Judge Hochberg. Your Honor, we had the initial scheduling conference, the Rule 16 conference, before the magistrate in the beginning of June. We believe that there will be limited discovery conducted, and in fact, if Wayne does amend this ordinance, a plaintiff, I would assume, would make the argument that it's a prevailing party that would be entitled to fees under the 1983 statute. So I believe that if Wayne amends the ordinance, there's limited discovery conducted, depending on what the appellate division does with the William Patterson issue, that the matter should proceed rather swiftly and come to a conclusion. Thank you, Your Honor. I apologize. I mean the United States Court of Appeals for the Third Circuit. My apologies. That's what I meant. My apologies. Thank you, Your Honor. I'd like to address this notion that this is not a public access channel. There is no place in this record that remotely suggests that. In fact, at A90, the Ordinance No. 56 specifically refers to two public access channels. The first one dedicated to government and public access. The second access channel will be dedicated to educational and public access. So this notion that this is an educational channel solely for the use of William Patterson to make its rules up pretty much as it goes along is not supported by the record. It should be rejected. The second thing I'd like to point out is this, that the well-pleaded facts in this case are set forth in the verified complaint. They specifically set forth facts upon which and actually argue that this is a designated public forum. Of course, that's, I think, a combination of factual legal issue. But the fact that the Cable Act created these or the Cable Act authorized the creation of these public access channels, weighing township through a franchise required them, that is, I believe, dispositive of the issue as to whether or not, as to the fact that this is a designated public forum. Now, let me talk about Jackson v. Haas. That case was a final judgment, and the preliminary injunction sought to prohibit enjoying a merger and acquisition. That merger, the preliminary injunction was denied. It went to final judgment. The merger and acquisition had taken place. It makes perfectly good sense for the Court to say, why are we ruling on that? It's very, very different when you have this continuing dispute and a continuing denial of Mr. Brennan's First Amendment rights based upon content. There's no issue that this is based upon content. He used the words tits, and it was in reference to feeding at the public tit. And if you'll see the email from Mr. Gorski, which is, I believe, 824, he says teats is okay, but tits is not okay.  Where is that narrowly drawn to advance a state interest? And why is that reasonable? The other thing is, if there were written rules and regulations to guide the discretion of the Cable Advisory Board, they should be part of this record. As far as we're concerned, there was a reference to a series of documents. There's no document submitted to this Court, and it's not in, you know, that establishes or sets the discretion of this Cable Advisory Board. And the unreasonable nature of their decision that feeding at the public tit is wrong, but feeding at public teats is okay, I think reflects the unreasonable nature of their decision-making. And in fact, what it was was a delay tactic. And this is all about prior restraints, by the way, which are presumptively invalid. You have to get permission from Wayne Township and William Patterson, both, to air shows on their public access station. The Cable Act prohibits that. It says that a cable operator shall not exercise editorial control over the content. Now, there is no question that Wayne Township and William Patterson have chosen to operate these public access channels. They are therefore bound by the Cable Act's prohibition of editorial control. They violated that, and the applicable constitutional standard is strict scrutiny. Now, the Cable Act sets forth certain things, and the reason why we don't rely specifically on the Cable Act as a violation in this case is because these are state actors, and they are bound to respect the First Amendment and the state constitution as well. The Cable Act would be applicable to an operator or a public access channel that's not a state actor, but we don't even have to get there because these are state actors. I urge the Court to find that these public access channels are designated public forum by virtue of Congress's intent, very clearly set forth in the Cable Act, that no editorial control over the content should take place, that they fail to meet strict scrutiny. Thank you, Judge. Thank you.